William E. HOCKLEY and Robert J. Hockley, Plaintiffs,

v.

ZENT, INCORPORATED, Defendant.

Harold Gilbert SANDERS, Defendant and Third Party Plaintiff,

v.

WALKER STAINLESS EQUIPMENT COMPANY and Wagner Electric Corporation, Third Party Defendants and Further Third Party Plaintiff,

v.

Stephen J. HELMAN, Further Third Party Defendant.

Civ. No. 79–347.

United States District Court, M. D. Pennsylvania.

Nov. 12, 1980.

---

George F. Douglas, Jr., Carlisle, Pa., for plaintiffs.

Christian Erb, Jr., Harrisburg, Pa., for Zent.

G. Thomas Miller, Harrisburg, Pa., for Sanders.

James W. Evans, Harrisburg, Pa., for Walker.

Joseph P. Hafer, Harrisburg, Pa., for Wagner.

W. E. Shissler, Harrisburg, Pa., for Helman.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

### I. BACKGROUND

This case comes before the court on a motion to compel further discovery. The party alignment of the suit is quite complex. Thus, the underlying facts must be viewed in some detail.

The plaintiffs, William and Robert Hockley, state that they were injured in a traffic accident on November 20, 1978 in Adams County, Pennsylvania. The complainants assert that on the day of the collision they were travelling northward on Route 94 in a pick-up truck. Harold Sanders, meanwhile, operated a tractor trailer which was moving in a southerly direction. As these two vehicles approached each other, Sanders noticed another vehicle, driven by Stephen Helman, which was stationary in his path.[1] In an attempt to avoid hitting Helman, Sanders applied his brakes. Unfortunately, the trailer jackknifed, turned into the opposite lane, and collided with the plaintiffs. The instant litigation ensued.

The original complaint sought recovery against Sanders and his alleged employer, Zent, Incorporated. Walker Stainless Steel Equipment Company and Wagner Electric Corporation, co-manufacturers of the trailer, were joined by Sanders as third-party defendants. Several cross-claims were filed. Subsequently, Helman was also joined as a third-party defendant. The present motion concerns a discovery dispute between Sanders ("respondent") and Wagner ("movant").

---

1. Helman, who was also travelling southward, had stopped his vehicle. He apparently intended to make a left hand turn once the Hockleys had passed him.

On March 26, 1980, the movant served the respondent with a list of forty-three interrogatories. These inquiries were in part designed to determine the basis for Sander's contention that Wagner bore some degree of responsibility for the accident.[2] The respondent submitted answers on July 23, 1980.[3] The movant, nonetheless, is unsatisfied with a number of these replies. Specifically, Wagner argues that the following responses are "evasive," "incomplete," and "insufficient":

3. State in detail the manner in which you assert that the incident referred to in the Complaint occurred, specifying the instrumentality involved, and its relation to the damages allegedly sustained.

ANSWER: The accident occurred as a result of a failure of the "computer", "anti-lock" or "121" brake system on the tanker being hauled by Defendant Harold Gilbert Sanders, when he attempted to apply his brakes in order to bring his vehicle to a stop, behind a vehicle waiting to make a left turn from Route 94 onto Huntingdon Township, Route 632.

4. Do you contend that Third-Party Defendant, Wagner Electric Corporation, is liable for indemnity or contribution? If so, set forth the following:[4]

a. The factual basis for your contention;

ANSWER: The factual basis for Defendant Sanders' contention that Wagner is liable for indemnity or contribution is that Wagner was the manufacturer of the "computer", "anti-lock" or "121" brake system on the trailer which Sanders was hauling. Dr. Shapley has concluded that failure occurred in the electrical system of the trailer brakes. The system was equipped with inadequate fail safe devices, disconnect features, nor [sic] devices to warn of system failure. Had the trailer brakes been operating properly, Defendant Sanders should have been able to bring the vehicle to a stop in his lane of travel in sufficient time to avoid striking any other vehicle on the highway or, had he known the brakes were not functioning he could have made an appropriate change in driving practices.

. . . . .

d. The facts and opinions to which said expert is expected to testify regarding such contention;

ANSWER: See Answer 4 a above.

e. A summary of the grounds for each opinion of the expert in support of each contention.

ANSWER: See Answer 4 a above.

27. Do you contend that the accident here involved was in any way caused by a malfunction of any part, component system, assembly of parts or subassembly of parts of the braking system on said trailer? If so, please describe in detail each part, assembly of parts, component system or subassembly of parts that you allege malfunctioned and how they caused or contributed to the accident.

ANSWER: See Answer to Interrogatory No. 3.

Wagner claims that its participation in the construction of the trailer was limited to production of a component known as the "FMVSS 121 Anti-Skid System" ("121"), which forms part of the vehicle's braking process. Interrogatories 3, 4, and 27 were drafted to ascertain what defects in the 121 supposedly gave rise to liability on the part of the manufacturer. According to the movant, the proferred answers are vague and conclusory, because they do not state exactly what the respondent feels was wrong with the system. Consequently, Wagner contends that more detailed information is required for preparation of an adequate defense. The movant asks that the court compel Sanders to provide either

---

2. These interrogatories are contained in Document 20 of the Record.

3. See Document 48 of the Record.

4. The court rearranged the answers to Interrogatory 4 so that the answers could be placed immediately after the relevant questions.

more specific answers or, at his own expense, an expert for deposition.[5]

Significantly, the respondent does not dispute Wagner's right to further discovery with regard to the alleged defects in the 121. He does maintain, however, that the movant cannot obtain such information on the terms it desires. In the view of Sanders, the answers given to questions 3, 4, and 27 completely discharge his responsibility under the Federal Rules of Civil Procedure to reply to interrogatories concerning the 121. He insists that the costs of any additional discovery on that matter must accrue to Wagner.

## II. ANALYSIS

This motion must be viewed from two vantage points. On one hand, Wagner is seeking sophisticated technical information based on professional opinions. Therefore, the court must construe Federal Rule of Civil Procedure 26(b)(4)(A), which concerns a litigant's access to the evidence an opponent expects to present through expert testimony. Second, the movant can also characterize his motion as an attempt to force Sanders to give a concise statement of his essential legal theories relevant to Wagner's liability. To judge that contention, it is necessary to analyze Federal Rule 33(b) which authorizes the use of interrogatories for such purposes.

A. Rule 26(b)(4)(A)

▮ Federal Rule 26(b)(4)(A) sets forth the procedure by which a party can discover the expert opinions an opponent expects to present at trial.[6] This provision is generally the exclusive method for learning such information. *United States v. International Business Machines Corporation*, 72 F.R.D. 78, 80-81 (S.D.N.Y.1976).[7] The process occurs in two steps. First, the litigant requesting the discovery must begin the inquiry by filing an interrogatory asking the "other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Fed.R.Civ.P. 26(b)(4)(A)(i). If the individual seeking discovery desires further data, then a motion may be made to the court under Rule 26(b)(4)(A)(ii) for permission to inquire further of the expert "by other means," *e. g.*, deposition. Significantly, the costs for subsequent questioning under Rule 26(b)(4)(A)(ii) are to be absorbed by the party seeking discovery, *viz.*, Wagner, "[u]nless manifest injustice would result." Fed.R.Civ.P. 26(b)(4)(C).[8]

In the present case, the critical issue is whether or not Sanders has satisfied his responsibility under Rule 26(b)(4)(A)(i) to provide complete answers to the movant's interrogatories. If so, then any additional discovery must occur with the leave of the court and, in all probability, at Wagner's expense. If not, the burden is on the respondent to supply more information auto-

---

**5.** Wagner also asks the court to award it the expenses necessary for the filing of this motion on the grounds that Sanders' resistance is not justified.

**6.** Sanders intends to call as a witness Christopher G. Shapley, Ph.D., the individual who filled out the engineering responses to the interrogatories currently under review. *See* the answers to Interrogatories 2 and 4(b), Document 48 of the Record.

**7.** A possible exception to this principle, Rule 33(b), will be discussed in the next subsection.

**8.** The text of Rule 26(b)(4)(A) states:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate. For commentary on the Rule, *see* 4 Moore's Federal Practice ¶¶ 26.66[1][5] (1979); Wright & Miller, Federal Practice and Procedure: Civil §§ 2029-2034 (1970); Annot., 33 A.L.R.Fed. 403 (1977).

matically. There is no doubt that Sanders has identified both his expert and the general subject matter on which the witness will testify. The real question concerns the final Rule 26(b)(4)(A)(i) mandate that the answering party also "state the *substance of the facts and opinions* to which the expert is expected to testify and a *summary of the grounds for each opinion*." [emphasis added] The court must determine the nature of this requirement before it can determine if the tendered replies are adequate.

■ The case law defining exactly what constitutes the "substance of the facts and opinions" of an expert and a "summary of the grounds for each opinion" is sparse. There are, nevertheless, sufficient authorities to demonstrate the overall purpose of the interrogatories authorized under Rule 26(b)(4)(A)(i). Essentially, the inquiries are designed to afford the questioner notice of the basic arguments the responding litigant intends to press at trial. A good illustration of this principle is *Weiss v. Chrysler Motors Corporation*, 515 F.2d 449, 454–57 (2d Cir. 1975). In that case, the plaintiff presented Rule 26(b)(4)(A)(i) interrogatories quite similar to those submitted by Wagner in the instant suit. The complainant sought the identity of the defendant's experts, the subject matter on which they would testify, and summaries of the facts and opinions they would expound. In responding, the defendant entirely omitted reference to a theory which it later sought to establish at trial. The district judge accepted evidence concerning the theory. The Court of Appeals for the Second Circuit, however, reversed on the grounds that the plaintiff had not warned of the need to develop contrary evidence. As the *Weiss* opinion noted:

. . . The policy which prompted amendment to Rule 26(b)(4) of the Federal Rules of Civil Procedure to allow more liberal discovery of potential expert testimony was not merely for convenience of the court and the parties, but was intended to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact. 'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). See generally F.R. Civ.P. 26(b)(4), Advisory Committee Notes to 1970 Amendments.

. . . . .

We think that this policy was defeated in this litigation by reason of Chrysler's failure to disclose the theory of its potential expert testimony . . .

*Id.* at 456.

*Holiday Inns, Inc. v. Robertshaw Controls Company*, 560 F.2d 856 (7th Cir. 1977) also provides guidance in this area. In that litigation, the trial court excluded evidence pertaining to an important argument the plaintiff had hoped to pursue. On appeal, the complainant labelled that action reversible error. The Court of Appeals for the Seventh Circuit disagreed. The decision noted that the excluded proposition hinged on the charge that a deep fat fryer manufactured by one of the defendants was unreasonably dangerous, because it did not have a safety device to turn off the unit when there was a possibility of fire. The defendant had been asked in interrogatories to designate the "defects" that the fryer allegedly contained.[9] The complainant never identified the absence of the safety device as a basis for liability. Therefore, the Court of Appeals concluded that the district judge properly prevented consideration of the theory in order to stop the plaintiff from gaining an advantage through an unfair surprise. *Id.* at 857–58.

■ Wagner's present motion shall be viewed against the background of *Weiss* and *Holiday Inns*. The court must decide if the challenged responses give the movant

---

9. The *Holiday Inns* opinion does not specifically cite Rule 26(b)(4)(A)(i) as its underlying authority. Yet since the discovery in that case involved expert opinions prepared for trial, it is safe to assume that the provision was at issue.

*United States v. International Business Machines Corporation*, 72 F.R.D. at 81 (describing the Rule as "the exclusive method for obtaining such information").

sufficient notice of the theories under which the respondent plans to proceed. The answers to Interrogatory 4 [10] set forth the opinion that the crash occurred in two stages. First, the electrical system of the trailer's braking mechanism failed. Second, the crash occurred due to the fact that the 121 was not equipped with adequate "fail safe devices, disconnect features, [or] devices to warn of system failure." Thus, *Weiss* and *Holiday Inns* are distinguishable. Sanders has clearly indicated the theory that he will assert against Wagner, *i. e.*, the proposition that the 121 was defective because it lacked proper fail safe, disconnect, or warning features. While it must be admitted that this summary of the envisioned expert testimony is skeletal, the movant has received proper notice within the intent of Rule 26(b)(4)(A)(i).

Two final points should be noted. As already discussed, the answers to these interrogatories have not exhausted Wagner's right to discovery. Further inquiries, however, must adhere to Rule 26(b)(4)(A)(ii).[11] Second, if the respondent decides to formulate any other theories against the movant, then he must inform Wagner as soon as possible. Fed.R.Civ.P. 26(e)(1).

**B. Rule 33(b)**

Early cases construing the Federal Rules of Civil Procedure often excluded interrogatories in which the inquiring party asked an opponent to set forth its essential legal arguments. *See, for example, Jones v. Goldstein*, 41 F.R.D. 271, 273 (D.Md. 1966).[12] In 1970, Rule 33(b) was amended to remedy this situation. The new provision reads:

(b) SCOPE; USE AT TRIAL. Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the extent permitted by the rules of evidence.

An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time.

Today, there is no doubt that the federal rules allow a litigant to require an opponent to answer interrogatories asking for a delineation of legal theories so long as the question is calculated to serve a "substantial purpose" in prosecution of the suit, such as a narrowing of issues. *Scovill Manufacturing Company v. Sunbeam Corporation*, 357 F.Supp. 943, 948–49 (D.Del.1973).[13] A respondent, moreover, cannot object merely because an explanation of its case requires consultation with one or more experts. 4 Moore's Federal Practice ¶ 26.66[2] (1979).

Yet Rule 33(b) does not support Wagner's motion to compel discovery. As previously noted, Sanders has already explained his underlying argument. Any requirement for further detail would clash with the procedure established by Rule 26(b)(4)(A). That result would be unacceptable. *See United States v. International Business Machines Corporation*, 72 F.R.D. at 81. The respondent's motion, therefore, is denied.[14]

---

**10.** For the response to Interrogatory 4, *see* the text accompanying n.4, *supra.*

**11.** In his opposition brief to Wagner's motion, Sanders stated a willingness to accede to a deposition of Dr. Shapley. If the parties can agree to the terms of such a meeting, they should submit a stipulation to the court.

**12.** *See also* Wright & Miller, Federal Practice and Procedure: Civil § 2167 nn.90–95 (1970) and the cases cited therein.

**13.** *See also* Wright & Miller, Federal Practice and Procedure: Civil § 2167 (1970).

**14.** Since Wagner's motion to compel is denied, his companion request that Sanders be required to bear the expenses of the motion is moot.